C. W. NUGENT et al., Appellants,

v.

David SCHARFF et al., Appellees.

No. 15000.

Court of Civil Appeals of Texas, San Antonio.

Dec. 29, 1971.

Rehearing Denied Feb. 23, 1972.

Thos. A. Adams, III, Houston, Tuck R. Chapin, San Antonio, for appellants.

Levey & Goldstein, San Antonio, for appellees.

KLINGEMAN, Justice.

This suit was brought by Daniel N. Forestier, hereinafter called Forestier, against C. W. Nugent and wife, Lena Nugent, hereinafter called Nugent, and Daniel Scharff and wife, Golda Scharff, hereinafter called the Scharffs, to recover a real estate commission on a transaction that was never consummated. The case before us involves two separate appeals, one by Nugent from an instructed verdict of the trial court that Forestier recover from Nugent a real estate commission in the amount of $53,750.00, and the other, an appeal from an instructed verdict of the trial court that Forestier recover nothing from the Scharffs.

On January 29, 1969, Forestier, a real estate broker, obtained a Nonexclusive Listing Agreement from Nugent as owner of Berrendo Square Apartments, in which Nugent agreed to pay Forestier, in cash, at the time of closing, a commission equal to 5% of the gross sales price of such property.[1] Thereafter, on April 26, 1969,

---

1. The agreement provided in part as follows: "Owner agrees to pay to Broker, in cash, at the time of closing, in the county wherein the property lies, a commission

an Earnest Money Contract of sale and purchase was executed by Nugent, Forestier and the Scharffs, wherein the Scharffs agreed to purchase from Nugent the Berrendo Square Apartments for a total sales price of $1,075,000.00.

Under the terms of such contract, the purchaser (Scharffs) was to pay $70,000.00 in cash, assume two mortgages in the approximate amount of $885,000.00, and assume a note to Finger Furniture Company in the approximate amount of $3,802.00. The purchaser further agreed to enter into a note in the amount of approximately $116,198.00, payable to Nugent and Forestier at 8% for fifteen years. Such contract further provides that Forestier was to receive $8,000.00 cash at the time of closing from Nugent. In such contract Nugent agreed to pay Forestier a commission of 5% for services rendered.

On April 10, 1969, the last day for the closing of the transaction under the contract, Forestier, Nugent and the Scharffs met at the title company and executed a deed of conveyance, deed of trust, notes and other papers necessary to consummate the transaction. Instead of one note payable to Nugent and Forestier, the Scharffs executed one note in the amount of $76,070.00, payable to Nugent, and one note for the sum of $45,750.00, payable to Forestier. Contemporaneously with the signing of the notes and deed of trust, the Scharffs issued a check in the sum of $56,701.27, payable to Stewart Title Company, being the amount due by them at the time of closing. This check was attempted to be cashed by Stewart, but was returned because of insufficient funds. A few days later, the Scharffs stopped payment on the check and notified all of the interested parties that they would not go through with the deal because of alleged misrepresentations by Forestier. There is testimony that the Scharffs knew at the time that they gave such check that they did not

have sufficient funds on hand to make the check good, but were relying upon the sale of another house from the Scharffs to another party for the funds to make the check good, and that Forestier was aware of this. On November 17, 1969, Nugent and the Scharffs rescinded the contract of sale entered into by them on April 26, 1969, and mutually released each other from any and all liability under said contract.

Forestier brought suit against Nugent and the Scharffs to recover commissions in the amount of $53,750.00, which he alleged to be due him as commissions under the contracts. In the alternative, he sought recovery of the sum of $45,750.00 on the note executed by the Scharffs, and the sum of $8,000.00 from Nugent. He also sought recovery in the alternative on the theory of quantum meruit in the sum of $53,750.00.

In this opinion the two appeals will be discussed separately.

### Nugent's Appeal

Nugent asserts two points of error: (1) that the trial court erred in overruling his motion for directed verdict, and in failing to direct a verdict in his behalf that Forestier take nothing against him; and (2) the trial court erred in rendering judgment for Forestier against Nugent as a matter of law in ruling that the evidence presented no disputed fact issue to be decided by the jury. We sustain Nugent's second point of error.

Nugent's basic contentions on this appeal are: (1) the record conclusively shows that the broker (Forestier) did not produce a buyer who was ready, willing and able; or in any event, there is a fact issue as to whether Forestier produced such a buyer; (2) the broker's right to a commission depended upon an actual sale of the property,

equal to 5% of the gross sales price of said property, if the Broker shall during the term of this agreement produce a purchaser ready, willing, and able to buy said property at price above listed, or any other price owner has agreed to accept."

and the closing or consummation of the sale of the property involved was a condition precedent to any payment of commission; and (3) that there was a failure of consideration of the contract by reason of the insufficient check given by the Scharffs.

In Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725, 727 (1930), the Supreme Court of Texas describes as well established these rules:

> " 'A commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate, unless there is a stipulation in the contract of employment to the contrary. If by the contract of employment the broker is merely to find a customer who is able, ready, and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Thus a broker employed to find a purchaser or a vendor or to exchange lands ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale or exchange, although without any fault on the part of the broker the contract is never carried out, unless there is a stipulation, express or implied, making his right to compensation depend on the performance of the contract or the happening of some other event.' 9 C.J. p. 591, § 86b."

It is undisputed that the check given by the Scharffs for the cash consideration provided for under the contract of sale was not honored by the bank because of insufficient funds. Mrs. Scharff testified that at the time she gave the check she knew that she did not have sufficient funds to cover the check, and there is testimony that Forestier was aware of this. Mrs. Scharff also testified that she could not get the necessary funds from any bank and that the deal would fail unless she was able to sell her home to raise sufficient funds to complete the down payment. A representative of the title company testified that because the check given by the Scharffs for the down payment was not honored by the bank, and was returned to the title company, they stopped everything, and that the closing papers held by them were never recorded or delivered. It is clear from the record that the cash consideration called for in the contract of sale was never paid. There is testimony that the sale was never completed because the Scharffs were unable to raise the cash consideration provided for in the contract. Forestier, on the other hand, contends that the financial statement of the Scharffs establishes that the Scharffs were able to purchase the property.

There is no conclusive evidence that the purchaser produced by the broker was ready, willing and able to purchase on the seller's terms. We hold that under the record there is a disputed fact issue as to whether Forestier produced a purchaser who was ready, willing and able.

The trial court erred in instructing a verdict that Forestier recover from Nugent a real estate commission of $53,750.00.

### Forestier's Appeal

Although Forestier is the holder of a judgment from the trial court in the amount of $53,750.00, the amount sued for in his suit for commission, he asked this Court to reform such judgment to allow a recovery of $8,000.00 against Nugent and to render a judgment on his behalf against the Scharffs for the sum of $45,750.00, the amount of the note signed by the Scharffs. Forestier by his first point of error asserts that the trial court erred in failing to instruct a verdict be returned against C. W. Nugent and wife, Lena Nugent for the sum of Eight Thousand Dollars ($8,000.-00), together with legal interest on such sum from April 10, 1969.

The sale of the property involved in the contract of sale was never finally consum-

mated, and there is nothing in the record to establish that the failure to consummate such sale within the provided time and in accordance with the terms and provisions of the contract was in any way the fault of Nugent. Further, as we have heretofore held, the record does not show as a matter of law that Forestier produced a buyer who was ready, willing and able. The trial court did not err in failing to instruct a verdict against Nugent in the sum of $8,000.00. Forestier's Point of Error No. 1 is overruled.

By his second point of error, Forestier asserts that the trial court erred in failing to instruct a verdict be returned against David and Golda Scharff for the sum of Forty-Five Thousand Seven Hundred Fifty Dollars ($45,750.00), together with legal interest on such sum and attorney's fees at ten per cent per annum from April 10, 1969.

In defense thereof the Scharffs contend that: (a) nowhere in the two written contracts here involved [2] did the Scharffs ever obligate themselves to pay a commission to Forestier; (b) that there is no consideration for the note involved; (c) that the consideration for such note completely failed; (d) that a broker is not entitled to a recovery of a real estate commission against a purchaser on a theory of quantum meruit; and (e) that there was no liability on the part of the Scharffs to Forestier because the contract of purchase signed by the Scharffs was induced by false and fraudulent representations made by Forestier to the Scharffs.

We believe the Scharffs' defenses are well founded. In the contracts here involved, the Scharffs nowhere obligated themselves to pay a commission to Forestier, and such contracts specifically provide that the commission is to be paid by the seller, Nugent. Such contracts impose no contractual obligation on the Scharffs to pay any commission to Forestier.

It is also clear from the examination of the contracts, deed of conveyance, note and deed of trust that the note of $45,750.00 signed by the Scharffs to Forestier is a part of the consideration for the conveyance of the property, which conveyance was never completed. Such note is a part of the total sales price which the Scharffs agreed to pay Nugent for the property under the contract of sale, and the deed of conveyance from Nugent to the Scharffs recites that a part of the consideration is the execution and delivery of one note in the sum of $45,750.00 from the Scharffs to Forestier, and such note is secured by a vendor's lien and deed of trust lien against the property being conveyed. Since conveyance was never consummated, the consideration totally failed.

Under the record the trial court did not err in failing to instruct that a verdict be returned against the Scharffs for the sum of $45,750.00, and Forestier's Point of Error No. 2 is overruled.

That part of the judgment decreeing that Forestier recover nothing from Scharff is severed and affirmed. That portion of the judgment that decrees that Forestier recover from Nugent a real estate commission in the sum of $53,750.00 is reversed and remanded to the trial court for a new trial.

CADENA, Justice (concurring in part and dissenting in part).

I agree that the judgment of the trial court must be reversed and the cause remanded for a new trial. But, insofar as Forestier's judgment against the seller,

---

2. Article 6573a, Section 28, Vernon's Annotated Civil Statutes, provides in part: "No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

Nugent, is concerned, I would reverse solely on the ground that there is evidence that Forestier, the broker, knew, at the time that he produced the prospective purchaser, that such purchaser was not financially "able" to purchase the property, and that he did not make this fact known to Nugent. The majority opinion in this case seems to indicate that if the purchaser was, in fact, not an "able" purchaser, this, in and of itself, defeats the broker's right to a commission even though the seller accepted the purchaser and entered into a binding and enforceable contract of sale with the purchaser produced by the broker. I am not willing to join in such a holding. See Anno.: 74 A.L.R.2d 437, 454–57 (1960).